**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| UBIQUITOUS AUDIO SYNCHRONICITY, LLC,<br><br>Plaintiff,<br><br>v.<br><br>PEPPERL+FUCHS SE,<br><br>Defendant. | Case No. 2:26-cv-465<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**JURY TRIAL DEMANDED** |

<u>**COMPLAINT FOR PATENT INFRINGEMENT**</u>

Plaintiff Ubiquitous Audio Synchronicity, LLC ("UAS" or "Plaintiff") hereby asserts the following claims for patent infringement against Defendant Pepperl+Fuchs SE, ("Pepperl+Fuchs" or "Defendant"), and alleges as follows:

**SUMMARY**

1. UAS owns United States Patent No. 10,133,888 (the "'888 Patent" or the "Asserted Patent").

2. Defendant infringes the Asserted Patent by implementing, without authorization, UAS's proprietary technologies in a number of their products including, *inter alia*, all Pepperl+Fuchs RFID read/write devices with switchable polarization, including at least IUH-F192-V1-FR1, IUH-F192-V1-FR2, IUH-F190-V1-FR1-01, IUH-F190-V1-FR2-02, IUH-F190-V1-FR2-08, and IUT-F190-V1-B40-2V1D-FR1-01 (the "Accused Products").

3. By this action, UAS seeks to obtain compensation for the harm it has suffered as a result of Defendant's infringement of the Asserted Patent.

1

**NATURE OF THE ACTION**

4.     This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq*.

5.     Defendant has infringed and continues to infringe, and at least as early as the filing and/or service of this Complaint, have induced and continue to induce infringement of, and have contributed to and continue to contribute to infringement of, at least one or more claims of UAS's Asserted Patent at least by making, using, selling, and/or offering to sell their products and services in the United States, including in this District.

6.     UAS is the legal owner by assignment of the Asserted Patent, which was duly and legally issued by the United States Patent and Trademark Office ("USPTO").  UAS seeks monetary damages for Defendant's infringement of the Asserted Patent.

**THE PARTIES**

7.     UAS is a Texas limited liability company having an address at 5900 Balcones Dr, Suite 100, Austin, Texas 78731.  UAS is the owner of intellectual property rights at issue in this action.

8.     On information and belief, Defendant Pepperl+Fuchs SE is a German company with its principal place of business at Lilienthalstraße 200, 68307 Mannheim, Germany. Defendant is a non-resident of Texas who engages in business in this state but has not designated or maintained a resident agent for service of process, and therefore may be served with process by serving the Texas Secretary of State pursuant to Texas Civil Practice and Remedies Code § 17.044.

9.     On information and belief, Defendant directly and/or indirectly develops, designs, manufactures, distributes, markets, offers to sell and/or sells infringing products and services in the United States, including in the Eastern District of Texas, and otherwise directs infringing

activities to this District in connection with their products and services.

## JURISDICTION AND VENUE

10.     As this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, this Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

11.     This Court has personal jurisdiction over Defendant, in part because Defendant does continuous and systematic business in this District, including by providing infringing products and services to the residents of the Eastern District of Texas that Defendant knew would be used within this District, and by soliciting business from the residents of the Eastern District of Texas.  For example, Defendant is subject to personal jurisdiction in this Court because, *inter alia*, Defendant has distribution partners in this District and directly and through agents, subsidiaries, and affiliates regularly does, solicits, and transacts business in the Eastern District of Texas.

12.     In particular, Defendant, itself and through its controlled subsidiaries and affiliates, has committed and continues to commit acts of infringement in violation of 35 U.S.C. § 271 in Texas, and has made, used, marketed, distributed, offered for sale, sold, and/or imported infringing products in the State of Texas, and engaged in infringing conduct within and directed at or from this District. For example, Defendant, itself and through its controlled subsidiaries and affiliates, has purposefully and voluntarily placed the Accused Products into the stream of commerce with the expectation that the Accused Products will be used in this District.  The Accused Products have been and continue to be distributed to and used in this District.  Defendant's acts cause and have caused injury to UAS, including within this District.

13.     Wholly owned subsidiaries and affiliates who regularly and continuously conduct business in this District at the direction and on behalf of Defendant include at least Pepperl+Fuchs,

3

Inc., an Ohio corporation registered to conduct business in Texas, Pepperl+Fuchs Manufacturing, Inc., a Delaware corporation registered to conduct business in Texas, and Pepperl+Fuchs Americas, Inc., a Delaware corporation registered to conduct business in Texas.

14.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(c)(3) because Defendant is a foreign corporation not resident in the United States and may, therefore, be sued in any judicial district.

## THE '888 PATENT

15.     The '888 Patent is entitled "Data Reader and Positioning System" and was issued on November 20, 2018.  A true and correct copy of the '888 Patent is attached as Exhibit A.

16.     The '888 Patent was filed on September 28, 2006, as U.S. Patent Application No. 11/536,019.

17.     The '888 Patent claims foreign priority to Japanese Patent Application No. 2005-293984, filed October 6, 2005.

18.     UAS is the owner of all rights, title, and interest in and to the '888 Patent, with the full and exclusive right to bring suit to enforce the '888 Patent, including the right to recover for past infringement.

19.     The '888 Patent is valid and enforceable under the United States patent laws.

20.     The '888 Patent addresses the persistent technical challenge of radio frequency "dead spots" (null points) that occur when direct and reflected waves interfere destructively. These dead spots lead to "read-disabled status," where a radio IC tag cannot receive enough energy to respond even if it is within the reader's theoretical range. Exhibit A at 1:33–42. The problem is further compounded in environments with multiple readers, where simultaneous transmissions can cause cross-reader interference, preventing the system from accurately capturing tag data or

4

determining its physical location. *Id.* at 1:43–47.

21.     To eliminate these dead spots, the patent claims a system that utilizes a phase adjustment circuit (specifically a PLL or programmable phase shifter) to stepwise shift the phase of the carrier wave. *Id.* at 14:7–14. By shifting the phase, the system physically moves the interference patterns within the environment. This ensures that a tag temporarily located in a null point will eventually be positioned in a constructive interference zone after the phase change, allowing the reader to successfully retrieve its data. *Id.* at 14:15–23; Col. 15:23–38.

22.     Beyond simple data retrieval, the invention provides a high-accuracy positioning system that calculates a tag's coordinates by varying radiation characteristics across a plurality of antenna units. The control unit is configured to sequentially change parameters such as beam direction, beam width, and polarization (vertical, horizontal, or circular) to capture multiple signal strength data points for each specific ID. *Id.* at 3:20–44; 16:15–20. This multi-faceted approach ensures that the system can designate a tag's position regardless of the tag's orientation or environmental obstacles. *Id.* at 3:45–53.

23.     The claimed solution also incorporates frequency and success-rate analysis to refine these position estimates. In one embodiment, the system switches between different central frequencies (channels) to change the radio wavelength, further mitigating frequency-dependent null points. *Id.* at 4:1–15. Alternatively, the positioning unit can calculate a tag's location based on the "number of successful reads" out of a predetermined frequency of attempts (e.g., 100 times), using the success rate to estimate distance and coordinates with greater stability against signal fluctuations. *Id.* at 5:1–9; 26:14–40.

24.     Defendant has had actual knowledge of the '888 Patent.

25.     UAS is in compliance with any applicable marking and/or notice provisions of 35

U.S.C. § 287 with respect to the '888 Patent.

### COUNT I: INFRINGEMENT OF THE '888 PATENT

26.    UAS incorporates by reference and re-alleges paragraphs 1-24 of this Complaint as if fully set forth herein.

27.    Defendant has infringed and is infringing, either literally or under the doctrine of equivalents, the '888 Patent in violation of 35 U.S.C. § 271 *et seq.*, directly and/or indirectly, by making, using, offering for sale, or selling in the United States, and/or importing into the United States without authority or license, the Accused Products.

28.    As just one non-limiting example, the Accused Devices comprise the elements of Claim 1 of the '888 Patent, including:

A positioning system, comprising:

a plurality of antenna units mounted in different places to read data from storage mediums each having a storage unit for storing data and a communicating antenna for transmission of the data stored in the storage unit, by using radio waves having different polarization directions;

a control unit connected to each antenna unit, for controlling each antenna unit to sequentially change radiation characteristics of each antenna unit;

an antenna switch unit for selectively driving the antenna units in accordance with a control instruction from the control unit to transmit the radio wave having desired polarization directions according to each antenna unit by switching the antenna units; and

a positioning unit for calculating the position of each storage medium on the basis of strengths of signals, the strengths of the signals being obtained as a result of read operations of the data stored in the storage mediums, by using radio waves having different polarization directions, while having each antenna unit sequentially change its radiation characteristics.

*See* Ex. B.

29.      Additionally, Defendant has been and/or currently is an active inducer of infringement of the '888 Patent under 35 U.S.C. § 271(b) and contributory infringer of the '888 Patent under 35 U.S.C. § 271(c).

30.      Defendant has had actual knowledge of the '888 Patent.

31.      Defendant has provided the Accused Products to their customers and, on information and belief, instructions to use the Accused Products in an infringing manner while being on notice of  the '888 Patent and Defendant's infringement.  Therefore, on information and belief, Defendant knew or should have known of the '888 Patent and of its own infringing acts, or deliberately took steps to avoid learning of those facts.

32.      Defendant knowingly and intentionally encourages and aids at least its end-user customers to directly infringe the '888 Patent.

33.      Defendant's end-user customers directly infringe at least one or more claims of the '888 Patent by using the Accused Products in their intended manner to infringe.  Defendant induces such infringement by providing the Accused Products and instructions to enable and facilitate infringement, knowing of, or being willfully blind to the existence of, the '888 Patent. On information and belief, Defendant specifically intend that its actions will result in infringement of one or more claims of the '888 Patent, or subjectively believe that their actions will result in infringement of the '888 Patent, but took deliberate actions to avoid learning of those facts, as set forth above.

34.      Additionally, Defendant contributorily infringes at least one or more claims of the '888 Patent by providing the Accused Products and/or software components thereof, that embody a material part of the claimed inventions of the '888 Patent, that are known by Defendant to be

7

specially made or adapted for use in an infringing manner and are not staple articles with substantial non-infringing uses.  The Accused Products are specially designed to infringe at least one or more claims of the '888 Patent, and their accused components have no substantial non-infringing uses.  In particular, on information and belief, the software modules and code that implement and perform the infringing functionalities identified above are specially made and adapted to carry out said functionality and do not have any substantial non-infringing uses.

35.   At least as early as the filing and/or service of this Complaint, Defendant's infringement of the '888 Patent was and continues to be willful and deliberate, entitling UAS to enhanced damages.

36.   Additional allegations regarding Defendant's knowledge of the '888 Patent and willful infringement will likely have evidentiary support after a reasonable opportunity for discovery.

37.   Defendant's infringement of the '888 Patent is exceptional and entitles UAS to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

38.   UAS is entitled to recover from Defendant all damages that UAS has sustained as a result of Defendant's infringement of the '888 Patent, including, without limitation, a reasonable royalty.

## PRAYER FOR RELIEF

WHEREFORE, UAS respectfully requests:

A.   That Judgment be entered that Defendant has infringed at least one or more claims of the '888 Patent, directly and/or indirectly, literally and/or under the doctrine of equivalents;

B.   An award of damages sufficient to compensate UAS for Defendant's infringement under 35 U.S.C. § 284, including an enhancement of damages on account of Defendant's willful

infringement;

C.      That the case be found exceptional under 35 U.S.C. § 285 and that UAS be awarded its reasonable attorneys' fees;

D.      Costs and expenses in this action;

E.      An award of prejudgment and post-judgment interest;

F.      A permanent injunction; and

G.      Such other and further relief as the Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, UAS respectfully demands a trial by jury on all issues triable by jury.

Respectfully submitted,

Dated:  June 11, 2026

By: */s/ Nicholas Najera*
Neal Massand
Texas Bar No. 24039038
nmassand@nilawfirm.com
Nicholas Najera
Texas Bar No. 24127049
nnajera@nilawfirm.com

NI, WANG & MASSAND, PLLC
8140 Walnut Hill Ln., Ste. 615
Dallas, TX 75231
Tel: (972) 331-4600
Fax: (972) 314-0900

***Attorneys for Plaintiff***

9